```
UNITED STATES DISTRICT COURT                          C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
 HORACE MOORE,                                              :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
                              Petitioner,                   :
                                                            :    16-cv-6400(BMC)
            - against -                                     :
                                                            :
                                                            :
PAUL J. CHAPPLUS,                                           :
                              Respondent.                   :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 setting aside his state court conviction for second degree murder. He was sentenced to twenty years to life following his conviction after a bench trial. The facts will be set forth below to the extent necessary to address petitioner's points of error, but to summarize, petitioner twice stabbed a New York City bus driver in retaliation for refusing to give him a bus transfer, resulting in the bus driver's death.

The petition raises the following points of error: (1) insufficient evidence of intent to kill; (2) erroneous admission of a recorded telephone call in jail in which petitioner discussed having someone murder the two informants who he thought had tipped off the police as to his having stabbed the bus driver; (3) unduly suggestive lineup identification; (4) ineffective assistance of appellate counsel for not raising trial counsel's failure to obtain the information that led to petitioner's identification; and (5) ineffective assistance of trial counsel. As discussed below, each of these claims is either procedurally barred or without merit and, accordingly, the petition is denied.

## I. Insufficient Evidence

Petitioner argued on direct appeal that the evidence was insufficient to show that he intended to kill the bus driver, as required for second degree murder in New York, as opposed to intending to inflict serious physical injury, which would have resulted in a manslaughter conviction; the prosecution had agreed to defense counsel's request to submit both the murder and manslaughter charges to the trial court. His appellate counsel acknowledged that the issue of insufficient evidence of intent to commit murder was not preserved for appeal, and contended that defense counsel was constitutionally ineffective for not preserving it. The Appellate Division held:

> As [defendant] concedes, this contention is unpreserved for appellate review, since he failed to move for a trial order of dismissal at the close of the People's case. In any event, viewing the evidence in the light most favorable to the People, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. . . . There is no merit to the defendant's claim that he was deprived of the effective assistance of counsel by his counsel's decision not to move for a trial order of dismissal with respect to the murder count, since the evidence was legally sufficient to support his conviction of that crime.

People v. Moore, 118 A.D.3d 916, 917, 968 N.Y.S.2d 80, 82-83 (2d Dep't) (citations omitted), leave to app. denied, 24 N.Y.3d 1086, 1 N.Y.S.3d 13 (2014) (table).

The Appellate Division's holding that the legal insufficiency claim was "unpreserved" means that it is procedurally barred from habeas corpus review in this Court. This is because a federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the

2

state court's decision.  See, e.g., Coleman, 501 U.S. at 729-30, 111 S. Ct. at 2554; Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)).  If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

Here, as the Appellate Division noted, petitioner conceded that since his defense counsel failed to move for dismissal of the murder charge, the legal insufficiency claim was unpreserved for appellate review.  This is in accord with well-settled New York law.  See, e.g., N.Y. Crim. Proc. L. § 470.05(2); People v. Gray, 86 N.Y.2d 10, 629 N.Y.S.2d 173 (1995).  Because the Appellate Division properly invoked a state procedural ground to reject petitioner's claim, the claim is procedurally barred from review in this Court.

However, a procedurally barred claim can be reviewed in this Court if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice.  See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; Harris, 489 U.S. at 262, 109 S. Ct. at 1043.  The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a

3

constitutional violation results in the conviction of an individual who is actually innocent.  See Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable . . . [or that] the procedural default is the result of ineffective assistance of counsel."  Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488, 106 S. Ct. at 2645) (alteration in original).  Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murrary, 477 U.S. at 488-89, 106 S. Ct. at 2645-46, the ineffective assistance claim must itself have been exhausted in the state court.  Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1591-92 (2000).

Petitioner did, in fact, exhaust his ineffective assistance of trial counsel claim for not preserving this alleged error, and the Appellate Division rejected it.  Because the Appellate Division rejected the claim on the merits, its decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).  That statute requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent.  Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted).  A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of

4

the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . .'" Ryan v. Gonzales, 133 S. Ct. 696, 708 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102-03, 131 S. Ct. 770, 786 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 88, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'") (quoting Burt v. Titlow, 134 S. Ct. 10, 16 (2013)).

To show a Sixth Amendment violation to effective assistance of counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, he must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688, 104 S. Ct. at 2064-65. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and

5

citation omitted). Second, under the so-called "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669, 104 S Ct. at 2055-56. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792.

    Here, under any standard of review, it is quite obvious that preservation of the legal insufficiency claim would not have caused a different result because, in fact, the Appellate Division addressed the legal insufficiency claim on the merits in the alternative and found that the evidence was legally sufficient to sustain the trial court's guilty verdict. This holding was not contrary to, or an unreasonable application of, clearly established federal law on claims of insufficient evidence. The constitutional standard for sufficiency of the evidence is "'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Ercole, 666 F.3d 830, 835 (2d Cir. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)) (emphasis in original). As the Appellate Division explained, the number, location, and severity of the stab wounds petitioner inflicted upon the bus driver was sufficient for a rational trier of fact to find that petitioner intended to kill him.

    Thus, even if petitioner's trial counsel had moved to dismiss on the ground of legal insufficiency, this argument would have failed. For that reason, petitioner cannot meet the "prejudice" prong of the Strickland analysis, and cannot avoid the procedural bar on habeas corpus review.

    His legal insufficiency claim is therefore rejected as procedurally barred.

6

## II. Recorded Telephone Call

While in jail awaiting trial, petitioner had a telephone conference call with his girlfriend and a friend of his in which petitioner expressed the view that two individuals known to him had tipped off the police that he had stabbed the bus driver. After his girlfriend had dropped off the call, petitioner then stated to his friend, viewed in the light most favorably to the prosecution, that he wanted these two individuals killed. The trial judge, before having heard the recording, referred the issue of its admissibility to another judge on the theory that as finder of fact in a bench trial, he did not want to be "tainted" by what might be determined to be inadmissible evidence. The referral judge ruled the recording admissible evidence as showing consciousness of guilt.

On appeal, petitioner argued that the admission of the recording deprived him of due process of law because the prejudicial impact of the recording outweighed its probative value. This was because, according to petitioner, he had used offensive language (multiple racial and gender slurs) during the call, and the call did not shed light on whether petitioner intended to kill the bus driver or merely inflict serious injury. The Appellate Division held:

> The defendant was not deprived of a fair trial by the admission of two excerpts of an audio recording of a telephone call between him and his friends placed while he was incarcerated on Rikers Island. The excerpts revealed the defendant threatening the individuals whom he believed had turned him in to the police and requesting that his friends kill those individuals. The first excerpt was admissible because it contained what could be interpreted as an admission by the defendant that he had killed the victim. Any ambiguity as to the incident to which the defendant was referring affected only the weight to be given to the recording, not its admissibility. Both excerpts were admissible on the ground that they reflected his consciousness of guilt. The court properly concluded that the probative value of these excerpts outweighed their potential for prejudice.

Moore, 118 A.D.3d at 918, 988 N.Y.2d at 83 (citations omitted).

Once again, because the Appellate Division addressed this claim on the merits, my review is subject to the deferential review standard of AEDPA, set forth above. This narrow framework presents a doubly difficult burden for petitioner because the standard for habeas corpus relief based on a state court's alleged evidentiary error is already narrow. As the Second Circuit held in Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir. 1983), "[e]rroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial." (Emphasis in original). Accord Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 481 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (internal quotation marks and citation omitted); Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (per curiam). This constitutes a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." Bonet v. McGinnis, 98-CV-6529, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotations omitted); see also Crane v. Kentucky, 476 U.S. 683, 689, 106 S. Ct. 2142, 2146 (1986) ("We acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); Ayala v. Leonardo, 20 F.3d 83, 91 (2d Cir. 1994).

As if this isn't hard enough a standard, it must be remembered that this case was tried to the court, not a jury. This reduces petitioner's argument to a contention that an experienced trial judge was unduly prejudiced by petitioner's use of offensive language and could not properly separate from that the probative value of seeking to arrange the murder of the tipsters as to his consciousness of guilt, a dubious contention. Cf. United States v. Sebolt, 554 F. App'x 200, 206 (4th Cir. 2014) ("[I]n the context of a bench trial, there is less concern that the finder of fact will

8

utilize evidence for an improper purpose."); United States v. Lim, 57 F. App'x 701, 704 (7th Cir. 2003) ("[W]e reject [defendant's undue prejudice] claims, which are inapposite in a bench trial, where there is no risk of jury prejudice."); BIC Corp. v. Far E. Source Corp., 23 F. App'x 36, 39 (2d Cir. 2001) ("[T]he admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis"). Indeed, stating the argument practically answers the question. Whether under an abuse of discretion standard, or even a *de novo* review standard, let alone the more deferential AEDPA standard of review, I can find no basis of error in the Appellate Division's ruling.

### III. Suggestive Lineup

Two passengers who were on the bus identified petitioner out of a lineup as the assailant shortly after the stabbing. Petitioner raised two problems with the lineup on appeal. First, he contended that the shortest filler in the lineup (in terms of height) was placed in the middle, with petitioner next to him; the contention appears to have been that this would have led the witnesses to focus on that filler and petitioner.

Second, petitioner contended that a police detective's remarks to one of the passengers, as described at the pretrial suppression hearing, were different from his remarks to that passenger as described during the trial, and the remarks as described during the trial were unduly suggestive. Specifically, at the suppression hearing, the police officer testified that he said to the passenger: "I told her she was about to view a lineup and to look through the one way glass and tell me if she recognized anybody in the lineup. And if she did, where she recognized the person from." At trial, he testified that he said to the same passenger, "there is a person in the line-up that she may recognize. And if she did recognize that person, where [did] she recognize them[sic] from."

When defense counsel heard the detective's remarks at trial, he moved to reopen the suppression hearing and suppress the identification on the ground that the instruction to the witness was suggestive, which the trial court denied. The Appellate Division rejected his challenge to this ruling on direct appeal:

> Contrary to the defendant's contention, the hearing court did not err in failing to suppress the lineup identification testimony. While the fillers used in a lineup must be sufficiently similar to the defendant so that no characteristic or visual clue would orient the viewer toward the defendant as a perpetrator of the crimes charged, there is no requirement that a defendant in a lineup be surrounded by people nearly identical in appearance. Here, the photograph taken of the lineup reflects that the fillers sufficiently resembled the defendant. Any differences in height and weight were adequately obscured by the fact that the participants were seated, holding a card in front of their torsos. There was no evidence that the police positioned the defendant in a suggestive manner, since the defendant chose his seat and position number.
>
> Contrary to the defendant's contention, the court providently exercised its discretion in denying his motion, made during the trial, to reopen the suppression hearing. The defendant failed to demonstrate that the new facts he proffered in support of the motion were likely to affect the original determination.

Moore, 118 A.D.3d at 918, 988 N.Y.S.2d at 83 (internal quotation marks and citation omitted).

Once again, because the Appellate Division disposed of petitioner's claim on the merits, my review is constrained by the deferential standard under AEDPA described above. As applied to identification evidence, due process requires the exclusion of identification testimony that is so unreliable as to create "a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116, 97 S. Ct. 2243, 2254 (1977). To be admissible, the court must find either that the identification procedures were not unduly suggestive or that the identification was independently reliable despite any unnecessarily suggestive procedure. See id. at 114, 97 S. Ct. at 2253; Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972); Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001).

First, with regard to petitioner's claim that he stood out from the fillers because he was next to someone shorter to him, claiming that the physical arrangement of a lineup was unduly suggestive on federal habeas corpus review is particularly difficult because a state court's determination that it was not is treated as a finding of fact. And "a determination of a factual issue made by a State court shall be presumed to be correct," subject to rebuttal by a habeas petitioner by "clear and convincing evidence." 28 U.S.C. § §2254(e)(1). Moreover, "there is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.2d 953, 965 n. 15 (2d. Cir. 1975); accord Espiritu v. Haponik, No. 05 Civ. 7057, 2012 WL 161809 at *6 (S.D.N.Y. Jan. 19, 2012) ("[F]actual findings of the state court regarding the suggestiveness of the lineup must be presumed correct in the absence of clear and convincing evidence to the contrary.").

I have reviewed the same photograph of the lineup as the state court. There is nothing that would draw a witness's attention to petitioner in the lineup if the witness did not already know who petitioner was. It is true that the shortest filler is in the middle of the lineup, but that would no more draw the witness's attention to petitioner than it would to the person on the other side of the middle filler. Moreover, in all other respects, all of the fillers were quite similar to petitioner. I certainly cannot find that petitioner showed by clear and convincing evidence that the lineup was unduly suggestive.

With regard to the slightly different versions of what the detective who conducted the lineup told one of the witnesses, it should first be noted that the issue has nothing to do with the fact that he described his instructions to the witness a little differently at trial than he had at the suppression hearing. Rather, the issue is whether the instruction to the witness, as he testified at trial, was unduly suggestive. Under well-established case law, it was not. Not only did he fail to

11

definitively advise the witness that the suspect was, indeed, in the lineup – he simply said there was a person in the lineup who she "may" recognize – the law is clear that even had he told her that the suspect was, in fact, in the lineup, that would not be considered sufficiently suggestive to have violated petitioner's due process rights. Habeas courts in this Circuit have consistently held that "[a] substantial likelihood of irreparable misidentification is not created when police officers merely tell a lineup viewer that the suspected perpetrator will be in the lineup." Priester v. Strack, No. 98 Civ. 7960, 2001 WL 980563, *4 (S.D.N.Y. Aug. 23, 2001) (citing Hodge v. Henderson, 761 F. Supp. 993, 1007-08 (S.D.N.Y. 1990) ("[I]t is implicit in the viewing of a lineup that a suspect might appear. . . . [S]uch information does not predispose the viewer of the lineup to select any particular person. . . ."); Green v. Connell, No. 05-CV-5795, 2006 WL 3388656, *8 (E.D.N.Y. Nov. 21, 2006) ("[I]t is implicit in the display of a line-up that a suspect is among the persons viewed, and stating this fact to a witness is thus insufficient to create a substantial likelihood of misidentification."); see also Jenkins v. City of New York, 478 F.3d 76, 93 (2d Cir. 2007) ("This Court . . . has held that although the police generally should refrain from informing a witness that the suspect is in the lineup, a lineup is not unduly suggestive merely because they do so."); Sales v. Harris, 675 F.2d 532, 538 (2d Cir. 1982) ("As to the lineup, the only hint of suggestiveness emanated from the police officer's statement to [the victim] just prior to viewing the lineup that a suspect was in custody. Although this court has expressed disapproval of such a statement, the suggestiveness in this case was minimal. . . .") (internal citation omitted).

Of particular importance is the fact that petitioner must show that the Appellate Division's decision is contrary to or an unreasonable application of Supreme Court authority concerning identification of witnesses, and no Supreme Court decision suggests that a police

12

officer may not advise a lineup witness that they have a suspect in custody. See Piper v. Portuondo, 82 F. App'x 51, 52 (2d Cir. 2003) ("[N]either we nor the Supreme Court has ruled that such statements, by themselves, render a lineup impermissibly suggestive.") Petitioner cannot meet the applicable standard here.

**IV. Failure to Discover and Suppress Photo Array Based on Unknown Tipster**

It takes some interpretation to understand the argument that petitioner raised in his *coram nobis* motion to the Appellate Division. The Appellate Division denied it summarily. See People v. Moore, 137 A.D.3d 1306, 27 N.Y.S.3d 396 (2d Dep't 2016), leave to app. denied, 27 N.Y.3d 1136, 39 N.Y.S.3d 118 (2016) (table). This constitutes a decision on the merits for purposes of federal habeas corpus review. See Harrington, 562 U.S. at 99, 131 S. Ct. at 784-85.

Petitioner's claim, as stated in his *coram nobis* motion, was that his trial counsel failed to request an "independent source hearing," and that his appellate counsel failed to raise this omission on appeal. However, an independent source hearing does not appear to apply to this case. An independent source hearing takes place when a court rules that identification evidence has been unconstitutionally obtained and the prosecution is given an opportunity to show that notwithstanding the constitutional taint, it would have obtained the identification evidence anyway and therefore, if the court so finds, it is permitted to use it. See, e.g., Colorio v. Hornbeck, No. 05 CV 4984, 2009 WL 811588, at *2 n. 2 (E.D.N.Y. March 3, 2009); Castillo v. Walsh, 443 F. Supp. 2d 557, 569 (S.D.N.Y. 2006). That is not the scenario about which petitioner was complaining. There was no finding of unconstitutional identification evidence in his case, so there was no occasion for an independent source hearing.

Rather, as noted above, the police received an anonymous tip from one or two informants that petitioner was the assailant. Based on that tip, the police put petitioner's picture into a photo

array, and the photo array was shown to one of the passengers on the bus. The bus passenger picked him out of the photo array, and petitioner was arrested based on that. He was then picked out of a lineup by that same bus passenger and another bus passenger.

What petitioner appears to have been asserting in his *coram nobis* motion was that his trial counsel was constitutionally ineffective for not seeking to discover the identity of the tipster(s) and/or challenging petitioner's inclusion in the photo array, which led to his identification by the first bus passenger, and his appellate counsel was constitutionally ineffective for not raising either or both of these omissions on appeal.[1]

Although Strickland speaks to ineffective assistance of trial counsel claims, it is equally applicable to claims of ineffective assistance of appellate counsel. Aparicio v. Artuz, 269 F.3d, 78, 95 (2d Cir. 2001); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). "On appeal, counsel is not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims. . . . [I]nadequate performance is established only if counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." King v. Greiner, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (citing Jones v. Barnes, 463 U.S. 745, 751–53, 103 S. Ct. 3308, 3312-14 (1983)). But a petitioner may not rebut the presumption of effective assistance by simply arguing that appellate counsel's decision to raise certain issues and not others constitutes ineffectiveness. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Appellate counsel is not required to "press nonfrivolous points . . . if counsel, as a matter of professional judgment, decides not to present those points." Jones, 463 U.S. at 751, 103 S.Ct. at 3312; see also Knowles v. Mirzayance, 556 U.S. 111, 127, 129 S. Ct. 1411, 1422 (2009) ("The law does not require

---

[1] This particular mischaracterization of an "independent source hearing" has been repeated by a habeas petitioner in at least one other case. See e.g. Washington v. Walsh, No. 10-cv-7288, 2015 WL 4154103, at *7, 28 n.4 (E.D.N.Y. July 9, 2015).

14

counsel to raise every available nonfrivolous defense"). A petitioner must prove that there is a reasonable probability that the unraised claims would have succeeded. King, 210 F. Supp. 2d at 182-83 (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)).

Moreover, since the Appellate Division declined to award *coram nobis* relief on the merits, my review of that decision is subject to AEDPA's deferential standard as described above. Indeed, in reviewing claims of ineffective assistance of counsel, whether trial counsel or, as in this instance, appellate counsel, my review is "doubly deferential." Knowles, 556 U.S. at 123 (citing Yarborough v. Gentry, 540 U.S. 1, 6, 124 S. Ct. 1, 4 (2003) (per curiam)); see 28 U.S.C. § 2254(d). To prevail, petitioner must show not only that counsel's performance fell below the Strickland standard of reasonableness, but also that the state court's application of the Strickland standard was itself unreasonable and not merely incorrect. See Harrington, 131 S.Ct. at 785.

At petitioner's pretrial suppression hearing, detectives testified on direct examination that a photo array containing petitioner's picture as one of six was shown to a bus passenger who identified petitioner as the assailant; that petitioner was arrested in the vestibule of his girlfriend's apartment building; and that the first bus passenger and one other passenger picked him out of a lineup as the assailant after his arrest. At the hearing, petitioner's attorney repeatedly attempted to inquire on cross-examination how petitioner's photo came to be included in the array, but most of the time, the prosecution's objections to those questions were sustained, the hearing court reasoning that it did not matter how petitioner's photo came to be included in the array; once a witness, i.e., the bus passenger, who had not participated in the creation of the array, identified petitioner as the assailant from the array, probable cause existed for the arrest. Petitioner's attorney, however, was allowed to and did elicit that the detective who assembled the

15

photo array had spoken to a tipster; that the tipster was not a suspect; and that the tipster was not a witness to the crime.

To the extent petitioner's *coram nobis* motion was asserting that appellate counsel should have attacked trial counsel's conduct as ineffective assistance, I see nothing more that trial counsel could have done. He sought the identity of the tipster and to acquire sufficient information to attack the photo array. The hearing court sustained most of the objections to his questions and to the extent they were answered, the answers supported the hearing court's ruling, showing no relationship between the tipster, the crime, and the identifying bus passenger. I thus see no objective unreasonableness in trial counsel's conduct (nor do I see prejudice to petitioner) that could have been raised on appeal.

To the extent petitioner was, instead or in addition, challenging appellate counsel's failure to argue that the hearing court's rulings deprived him of his right to due process, I see no unreasonable application of Supreme Court authority. Even assuming, *arguendo*, that the police had not followed proper procedure in assembling the photo array or obtaining the information to do so, which appellate counsel could not have shown based on the record, once the bus passenger, who was uninvolved in the process of creating the photo array, identified petitioner from it, there was probable cause for his arrest, as petitioner never argued, and still does not argue, that there was anything wrong with the photo array itself. (In that sense, I suppose, the detective's testimony showed that there was an "independent source" for petitioner's arrest aside from the tip, which may be what petitioner was trying to articulate by the use of that term in his *coram nobis* motion.)

Indeed, petitioner's appellate counsel submitted an affidavit in connection with his *coram nobis* motion concisely explaining that this was why the argument that petitioner says should

have been made on appeal was not made: "Mr. Moore's arrest was not based on the provided [tipster] information, but instead upon the positive photo array identification by an eyewitness to the crime." The Appellate Division's decision does not warrant relief under the limited standard for habeas corpus review or indeed under any standard.

## V. Abandonment of Payton Hearing

After petitioner's indictment, his trial counsel filed a boilerplate omnibus motion and discovery request, typical in state court practice, demanding every kind of hearing and discovery item available under state procedure. The prosecution, as is also typical, consented to most of the hearings that were requested, and the state court thereupon entered an order allowing the pretrial hearings. One of the hearings allowed was a hearing pursuant to Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371 (1980), which held that police may not arrest a suspect in his home without an arrest warrant absent exigent circumstances. The basis for holding a Payton hearing was that petitioner had been arrested in the vestibule of his or his girlfriend's apartment building without a warrant, and his attorney, in the omnibus motion, contended there were no exigent circumstances.

At the pretrial hearing, however, the grounds for suppression of the arrest under Payton evaporated. The detective in charge, who was on scene, testified that the police had staked out the building after the bus passenger had identified petitioner from the photo array; that it was a multiple-occupancy building; that the vestibule door was open; that they observed petitioner's girlfriend's name on the mailbox in the vestibule; and that they never went into any apartment. Then, when they observed a woman in front of the building, two detectives approached her. While they were speaking to her, the arresting detective saw a person standing inside the open vestibule. He went into the open vestibule with petitioner's mugshot, visually confirmed that it

17

was petitioner, and placed petitioner under arrest. Since the vestibule was a common area and the door was open, there was no Payton issue – the police did not make an arrest inside a home. There was no ruling on a Payton issue from the hearing court; the facts were so one sided that petitioner's counsel pursued other pretrial issues, like the identification issues, and did not press the point.

Five years later, after his conviction, petitioner brought a §440 motion claiming that his trial counsel was constitutionally ineffective for not pursuing the Payton issue. The evidentiary basis for the motion consisted solely of a two-page affidavit from petitioner in which he averred that the door to the vestibule was always locked and so the police must have used force to open it. Notably, the affidavit did not state that petitioner saw the police using any force or that he locked the door upon entering the vestibule; he simply assumed they must have used force based on his belief that the door was "always" locked. The §440 court, comparing petitioner's affidavit to the detective's detailed testimony at the suppression hearing five years earlier, found petitioner's affidavit not credible. It relied on New York Criminal Procedure Law §440.30(4)(d), which states that

> the court may deny [a §440 motion on the merits] without conducting a hearing if . . . [a]n allegation of fact essential to support the motion is . . . made solely by the defendant and is unsupported by any other affidavit or evidence, and . . . under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true.

The §440 court therefore concluded that petitioner's trial counsel was not constitutionally ineffective under Strickland.[2]

---

[2] The §440 court also found that petitioner was procedurally barred from raising this ineffective assistance of counsel claim because it should have been raised on direct appeal, and if it had been raised on appeal, petitioner would have lacked standing to raise a Payton issue because he did not establish an interest in his girlfriend's apartment building. In the instant habeas case, respondent has agreed not to pursue those bases for the §440 court's holding.

Under federal habeas corpus review, a state court's reliance on New York Criminal Procedure Law §440.30(4)(d) constitutes a decision on the merits. Garcia v. Portuondo, 104 F. App'x 776, 779 (2d Cir. 2004). This means, once again, that my review of the §440 court's factual determination that the vestibule was open is constrained by AEDPA, and AEDPA similarly limits my review of its legal determination that petitioner received effective assistance of counsel.

Here, the state court set forth a detailed discussion of the detective's testimony in reaching its conclusion that the vestibule was open, and thus a Payton challenge by petitioner's counsel would have been futile. I see no basis for second-guessing that determination under Strickland.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability will not issue as the petition fails to raise any substantial issues. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962). The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎U.S.D.J.

Dated: Brooklyn, New York
 ‎ ‎ ‎ ‎January 5, 2017